UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

ADDMI, INC.,
A Delaware Corporation,

    Debtor.                                              Case No. 24-10776-j11

## DEBTOR'S CHAPTER 11 (SUBCHAPTER V) PLAN DATED OCTOBER 28, 2024

      The Debtor-in-Possession, Addmi, Inc. (hereinafter referred to as the "Debtor") hereby proposes the following Chapter 11 Plan (the "Plan") pursuant to 11 U.S.C. §§ 1190 and 1191.

      THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR FROM SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF; HOWEVER, THE DEBTOR DOES NOT WARRANT THAT ALL INFORMATION IS ACCURATE OR COMPLETE.

      ALTHOUGH THE DEBTOR'S PROFESSIONAL ADVISORS HAVE ASSISTED IN THE PREPARATION OF THIS PLAN, THEY HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION SET FORTH HEREIN AND MAKE NO REPRESENTATION AS TO THE ACCURACY THEREOF.

      THE DEBTOR URGES YOU TO READ THE PLAN VERY CAREFULLY. After carefully reading this Plan, including the Exhibits, each Holder of a Claim should decide whether to vote to accept or reject the Plan. Any such vote should be indicated on the appropriate enclosed Ballot and returned in the envelope provided. If you have a Claim in more than one Voting Class, you should utilize a separate Ballot for each Claim.

      **Requirements of Voting**. A holder of a Claim or interest, in order to vote on the Plan, must be in an impaired class, and must have filed a proof of Claim or interest with the Court prior to any bar date established by the Court, unless that creditor holds a Claim or interest that was scheduled by the Debtor as not disputed, not liquidated and not contingent. Any holder of a Claim or interest scheduled as not disputed, not liquidated and not contingent is, to the extent scheduled, deemed to have filed a Claim pursuant to Section 1111(a) of the Code and, absent objection, such Claim is deemed allowed.

      **Time and Manner of Voting**. The Court will issue an order requiring that all votes for the acceptance or rejection of the Plan be received on or before a deadline set by the Court and noticed along with a copy of this Plan to all creditors and parties in interest. Voting will be pursuant to the enclosed ballot. **The original, executed ballot should be returned to**:

        Gatton & Associates, P.C.
        10400 Academy Blvd NE, Suite 350
        Albuquerque, NM 87111
        Phone: (505) 271-1053; Facsimile: (505) 271-4848

**Fill in Ballots Properly**. Please fill in, date, sign, and promptly mail the enclosed ballot upon receiving notice of the entry of the Court order approving the Disclosure Statement, and before the deadline for voting. Be sure to properly complete the form and legibly identify the name of the holder of the Claim or interest. Unless otherwise directed by the Bankruptcy Court, Ballots which are not completed filled in or which are not signed or on which a vote to accept or reject the Plan has not been indicated or which indicates both acceptance and rejection of the Plan will be disregarded.

**Return of Ballot**. Mail or deliver your ballot so that it will reach the attorneys for the Debtor before the deadline. The deadline will be indicated on the ballot and will be docketed by the Court. A vote received after the ballot deadline will not be counted.

**Hearing on Plan Confirmation**. The Court will hold a hearing to determine whether the Plan should be confirmed. You may attend the hearing. Only parties who timely file a written objection to this Plan with the Clerk of the Bankruptcy Court may present to the Court arguments in opposition to confirmation of the Plan.

**Parties Bound**. Whether a creditor votes on the Plan or not, such creditor will be bound by the terms and treatment set forth in the Plan, if the Plan is confirmed by the Court.

## ARTICLE I
## DEFINITIONS AND ABBREVIATIONS

For purposes of this Plan, unless the context requires otherwise, the following definitions will apply:

1.1. "Acceptance by a Class": The Acceptance of the Plan by a class of claims or interests as provided for in Section 1126 of the Code and any applicable Rules, Local Rules or case law.

1.2. "Acceptance of Plan": Any acts, or failure to act, by the holder of a claim or interest, whether such claim is allowed at the time or not, which evidences the approval of, or acquiescence in, the provisions of the Plan, including but not limited to the affirmative vote by the holder of a claim or interest in favor of the Plan, by ballot, or the failure of the holder of a claim or interest to affirmatively reject the Plan.

1.3. "Administrative Claim" shall mean, collectively, a Claim for any cost or expense of administration of the Bankruptcy Case, asserted as being entitled to priority under §507(a)(1) of the Bankruptcy Code.

1.4. "Affiliate" shall mean "affiliate" as defined in §101(2) of the Bankruptcy Code.

1.5. "Allowed" when used with respect to a Claim or Interest, shall mean a Claim against or Interest in the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as last date for filing proofs of Claim or proofs of Interest; or, if no proof of Claim or proof of Interest was filed, a Claim or Interest which is listed by the Debtor as liquidated in amount and not disputed or contingent; and, in either case, a Claim or Interest as to which either (i) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the

Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (ii) if any objection has been interposed, such Claim or Interest has been Allowed in whole or in part by a Final Order of the Bankruptcy Court.

1.6. "Ballot Date" shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received.

1.7. "Bankruptcy Case" shall mean the Chapter 11 case commenced by the Debtor's filing of its voluntary petition under subchapter V of Chapter 11 of the Bankruptcy Code, administered under Case Number 24-10776-j11 in the Bankruptcy Court for the District of New Mexico.

1.8. "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended from time to time and set forth in §§ 101 et seq. of Title 11 of the United States Code.

1.9. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Mexico and the United States Bankruptcy Judge presiding in the Debtor's Chapter 11 case.

1.10. "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as the same may be amended and modified from time to time, and as applicable to cases pending before the Bankruptcy Court.

1.11. "Bar Date" shall mean the deadline set for the filing of proofs of claim, which was **October 11, 2024**.

1.12. "Business Day" shall mean any day other than Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

1.13. "Cash" shall mean cash and cash equivalents, including checks.

1.14. *This line is left intentionally blank*.

1.15. "Claim" shall mean any right to payment from Estate or Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate or Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.16. "Claimant" or "Claim Holder" shall mean the holder of a Claim.

1.17. "Class" shall mean the group into which Claimants have been placed in this Plan.

1.18. "Confirmation" shall mean entry of an order of the Bankruptcy Court confirming the Plan pursuant to §1191 of the Bankruptcy Code.

1.19. "Confirmation Date" shall mean the date the Bankruptcy Court enters a Confirmation Order confirming the Plan.

1.20. "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to §1191 of the Bankruptcy Code confirming the Plan and approving the transactions contemplated under the Plan.

1.22. "Debtor" shall mean Addmi, Inc., a Deleware corporation.

1.23. "Deficiency Amount" shall mean the amount by which a Claimant's total Allowed Claim secured by collateral owned by the Debtor or the Estate exceeds the value of the collateral, as determined in accordance with the Plan.

1.24. *This line is left intentionally blank.*

1.25. "Disallowed Claim" shall mean any Claim (i) listed as disputed in the Debtor's schedules for which a proof of claim has not been filed, or (ii) for which a Final Order disallowing the Claim has been entered.

1.26. "Disputed Claim" shall mean, unless otherwise set forth in this Plan, (i) a Claim (or portion thereof) against the Debtor as to which an objection to the allowance thereof has been interposed within the time period set forth herein for doing so, and which objection has not been determined by a Final order or (ii) a Claim listed on the Debtor's schedules as disputed, contingent, or unliquidated.

1.27. "Effective Date" shall mean the first day of the first month following the date upon which an Order confirming this Plan becomes final and non-appealable. An appeal may be filed for fourteen days following the entry of the Order.

1.28. "Estate" shall mean the estate of the Debtor created in the Bankruptcy Case by § 541 of the Bankruptcy Code.

1.29. "Fee Request" shall mean an Administrative Claim filed by a Professional Person for fees and costs incurred on behalf of Debtor or the Committee in this Bankruptcy Case.

1.30. "Final Decree" shall mean the final decree closing this Bankruptcy Case, to be entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

1.31. "Final Order" shall mean a final order or judgment of the Bankruptcy Court or any other court or adjudicative body, which order or judgment shall no longer be subject to appeal or certiorari proceeding, and with respect to which no appeal or certiorari proceeding shall then be pending, unless no order staying the effect of the order which is subject of the appeal has been entered.

1.32. "Insider" shall mean an "insider" as defined by §101(31) of the Bankruptcy Code.

1.33. "Interest" shall mean any equity or stock interest in the Debtor. Interest specifically includes all Claims recharacterized as equity Interests by Order of the Bankruptcy Court.

1.34. "Order" shall mean a judgment, order or other decree of the Bankruptcy Court the effect of which has not been stayed.

1.35. "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity or political subdivision thereof, or any other entity.

1.36. "Petition Date" shall mean **July 29, 2024**, the date on which the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.

1.37. "Plan" shall mean this Plan and any exhibits attached hereto or documents incorporated herein by reference, as the same may from time to time be amended by any duly authorized amendment or modification.

1.38. "Professional Person" shall mean any Person, including attorneys and accountants for Debtor or the Committee, retained or to be compensated pursuant to §§ 327, 328, 330, 3312. 503(b)(2), or 1103 of the Bankruptcy Code.

1.39. "Property of the Estate" shall mean all property comprising or contained in the Estate, as set forth in § 541 of the Bankruptcy Code, including without limitation all real property, personal property, and intangible property owned by the Debtor pre-petition.

1.40. "Pro Rata" shall mean, with respect to each Allowed Unsecured Claim, the ratio of the amount of such Claim to the aggregate amount of (i) all Allowed Unsecured Claims, plus (ii) all Disputed Unsecured Claims, as the amount of such Disputed Unsecured Claims is reduced from time to time by virtue of determinations by the Bankruptcy Court as to such Disputed Unsecured Claims.

1.41. "Real Property" shall mean the real property that is commonly identified as 1012 Haston Road, Carlsbad, NM 88220.

1.42. "Secured" shall mean, as set forth in 11 U.S.C. § 506(a), that an allowed claim of a creditor secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim.

1.43. "With Interest" shall that, unless a different rate is stated with respect to treatment of a particular Claim, the applicable statutory rate, for priority or secured tax claims; written contract rate of interest; or, if there is no written contract, the federal judgment rate of interest which was in effect on the Petition Date.

## ARTICLE II
## GENERAL PROVISIONS

For purposes of the Plan, the following general provisions will apply:

2.1. The date of an Order, Motion or other Pleading required to be filed with the Court shall be the date that the document is filed with the Court.

2.2. The date of any other paper not required to be filed, but required to be served, shall be the date actually served, by whatever means service may be allowed under the circumstances by the Code, Rules or Local rules.

2.3. Any obligation or payment imposed by this Plan shall be pre-payable without penalty.

2.4. During the pendency of the Bankruptcy Case, any notice required to be sent to Debtor shall be sent by certified mail to its counsel, Giddens & Gatton Law, P.C., 10400 Academy NE Suite 350, Albuquerque, New Mexico 87111, unless the person required to give Notice has been notified in writing of a change of address, or unless such person has actual knowledge of a different address at which Debtor or its counsel may be notified. After the Effective Date any Notices required to be sent shall go directly to the Debtor.

2.5. After Confirmation, Debtor may, with approval of the Court, remedy any defect or omission, or reconcile any inconsistency in the Plan, or in the Confirmation Order, as necessary to carry out the purposes and the intent of the Plan.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

3.1 **Payment of Administrative Claims**. All Allowed Administrative Claims except for Fee Requests shall be paid in full, in Cash, on the first day of the first month following entry of an Order of the Bankruptcy Court approving such Administrative Claim, or upon such other terms as may be agreed upon between Debtor and the Holder(s) of such Claims.

3.2. **Deadline for Filing Administrative Claims.** All requests for payment of Administrative Claims other than Fee Requests must be filed with the Bankruptcy Court within 30 days after the Effective Date. Any holder of such a Claim that does not file a request for payment within such 30-day period shall be forever barred from asserting its Claim.

3.3. **Fee Requests**. All Allowed Fee Requests shall be paid in the amount determined by an Order of the Bankruptcy Court approving such Fee Requests, as soon as practicable after the entry of an Order of the Bankruptcy Court approving such Fee Requests, or as may otherwise be agreed upon in writing between Debtor and each such Claimant. Amounts for professional fees previously approved but withheld by Order of the Bankruptcy Court shall be paid by Debtor as soon as practicable following approval of such payment by an Order of the Bankruptcy Court.

3.4. **Deadline for Filing Fee Requests.** All Fee Requests must be filed with the Bankruptcy Court within 60 days after the Effective Date. Any holder of such a Claim that does not file a request for payment within such 60-day period shall be forever barred from asserting its Claim.

3.5. **Allowance of Administrative Claims and Fee Requests.** No Administrative Claim or Fee Request shall be allowed without notice and a hearing pursuant to the terms of the Bankruptcy Code and Rules. Upon entry of an Order allowing such Administrative Claim or Fee Request, Debtor shall pay such Claim in accordance with the Plan, or as otherwise agreed between the Claimant and Debtor.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

For purposes of voting and all other Plan Confirmation matters, except as otherwise provided herein, all Claims and Interests shall be classified as set forth herein. Any Claim or Interest is in a particular class only to the extent such Claim or Interest fits within the description of such class, and is in such other and different class to the extent that the remainder of such Claim or Interest

fits within the description of such other class or classes, unless otherwise specified in this Plan. Any dispute with respect to classification of Claims or Interests shall be resolved by the Bankruptcy Court upon motion of the Claimant or Interest holder affected thereby, upon notice and hearing.

Under this Plan, Claims and Interests are classified as follows:

**Class 1: Allowed Secured Claims**. The Debtor does not have any secured Claims. None were scheduled by the Debtor, and no Claims were filed by the Bar Date purporting to be secured.

**Class 2: Allowed Priority Claims**, including any allowed Tax Claims which are entitled to priority under Section 507(a)(8). The IRS filed Claim No. 2 alleging a $50,477.30 priority Claim primarily for estimated FICA and FUTA amounts based on unfiled returns. Debtor disputes this Claim, believes that it filed all required returns, and will be filing an objection to this Claim. Any amounts allowed following the resolution of said objection will be classified as a Class 2 Claim.

**Class 3: Allowed General Unsecured Non-Priority Claims**, consisting of all Allowed Unsecured Non-Priority Claims, including but not limited to Claims arising from general unsecured debts and unsecured deficiency Claims.

**Class 4: Allowed Interests in the Debtor**, consisting of the equity interests in the Debtor.

**IMPAIRMENT OF CLAIMS:** Classes 2 and 3 are impaired under this Plan.

## ARTICLE V
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

5.1     **Method of Funding the Plan:**  The Debtor will fund this Plan through its ongoing operations and through the sale of a "forked" version of the source code of software owned by the Debtor.

5.2     **Classification and Payment of Claims:**  Classified Claims and Interests shall be treated as follows:

   **Class 1 (Allowed Secured Claims).   Class 1A is unimpaired.**

   A.     There are no Class 1 Claims. Therefore no distributions shall be made on any secured Claims.

   **Class 2 (Allowed Priority Claims).  Class 2 is impaired.**

   Class 2 will be paid as follows:

   A.     Debtor shall pay any Allowed priority Claim of the IRS in equal monthly installments of over a period ending no later than June, 2029, with interest accruing at the statutory rate, with the first such payment due on the first day of the first month following the Order allowing the Claim becoming Final.

   B.     No proof of claim has been filed by the New Mexico Taxation and Revenue Department ("NMTRD"), and NMTRD has no allowed Claim herein. To the

extent that NMTRD files a timely Claim and it is allowed, Debtor will modify this plan to include payment of NMTRD's allowed Claim.

**Class 3 (Allowed General Unsecured Non-Priority Claims). Class 3 is impaired.** Class 3 Creditors will be paid *pro* rata in quarterly payments due on the 21st day of the first month following the end of the quarter, with the first such payment due on the later of April 21, 2025 or the 21st day of the first month following the first quarter ending after the Effective Date[1], paid from Debtor's disposable income for the previous quarter as defined in 11 U.S.C. § 1191(c)(2)(A). Such payments shall continue for a period of 3 years (12 quarterly payments) at the rate of 0.00% interest per annum. Any amounts remaining unpaid at that time shall be discharged pursuant to 11 U.S.C. §§ 1192 and 1141(d).

**Class 4 (Allowed Claims of Equity Interest Holders). Class 4 is unimpaired.**

Equity Interest Holders shall retain their interests in the Debtor.

5.3    **Cramdown**: If any impaired class votes to reject this Plan, Debtor reserves the right to request that the Bankruptcy Court confirm the Plan under the "cramdown" provisions of 11 U.S.C. § 1191. Pursuant to this section, the Court **shall** confirm the Plan "if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of Claims or interests that is impaired under, and has not accepted, the Plan." 11 U.S.C. § 1191(b). The Debtor believes this Plan meets said requirements.

5.4.    **Disbursing Agent**. The Debtor shall act as its own Disbursing Agent, making distributions to creditors directly.

5.5.    **Default**. All obligations to make payments provided for under this Plan, and all instruments in evidence thereof, shall have a cure period of fifteen (15) days after receipt of written notice of failure to pay before such failure to pay shall constitute a default thereof. An uncured default shall constitute grounds for conversion or dismissal of this case. Further, following an uncured default of any payment required under this Plan, the creditor may (1) give notice to the Debtor of its election to accelerate the balance then remaining under this Plan, declaring the same to be immediately due and payable, (2) enforce any collateral rights, and (3) exercise any applicable non-bankruptcy remedies, including foreclosing on collateral in any court of competent jurisdiction. Written notice shall only be effective when sent in accordance with paragraph 14.9 herein.

---

[1] I.e., if the Effective Date is prior to April 1, 2025, the first payment will be due April 21, 2025; if the Effective Date is April 1, 2025 – June 1, 2025, the first payment will be due July 21, 2025.

# ARTICLE VI
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1.     **Assumption and Rejection of Executory Contracts and Unexpired Leases**: The Debtor hereby assumes any and all executory contracts and unexpired leases.

# ARTICLE VII
# PROCEDURE FOR RESOLVING DISPUTED CLAIMS

7.1.     **Power to Object to, Litigate, and Settle Disputed Claims.** After the Effective Date, the Debtor shall have the sole authority (1) to object to Claims or Interests, and (2) to litigate any Claim or Interest to a Final Order, to settle or compromise any Claim or Interest or withdraw any objection to any Claim or Interest (other than a Claim or Interest that is deemed allowed pursuant to the Plan or any Claim or Interest allowed pursuant to a Final Order). Unless another date is established by the Bankruptcy Court or the Plan, any objection to a Claim or Interest must be filed with the Bankruptcy Court within 90 days after the later of the Effective Date and the date that a proof of Claim with respect to such Claim is filed or deemed to have been filed with the Bankruptcy Court.

7.2.     **Bar Dates for Claims and Interests Generally**.  Each holder of a Claim (other than an Administrative Claim) or Interest must have filed a proof of Claim or proof of Interest, as the case may be, with the Bankruptcy Court (i) no later than the bar date applicable to such Claim or Interest previously established by the Bankruptcy Court, or (ii) to the extent any such holder demonstrates that they are not subject to such bar date, <u>within 30 days after the Effective Date</u> or by such later date as may be established by the Bankruptcy Court.  Any such holder who does not file a proof of Claim or proof of Interest, as the case may be, within the applicable time period will be forever barred from asserting its Claim or Interest unless, and to the extent that, such Claim is listed by the Debtor in its schedules filed with the Bankruptcy Court pursuant to Section 521 of the Bankruptcy Code as liquidated in amount, not disputed and not contingent.

# ARTICLE VIII
# EFFECT OF PLAN ON CLAIMS AND INTERESTS

8.1.     The Debtor hereby requests confirmation of this Plan pursuant to 11 U.S.C. § 1191, and hereby gives Notice of its intent to obtain confirmation pursuant thereto.

8.2.     On the Effective Date, Confirmation of this Plan shall have, *inter alia*, the following effects:

   8.2.1. All property of the bankruptcy estate, including rights, claims or causes of action, shall vest in the Reorganized Debtor, subject only to the Claims provided for in this Plan.

   8.2.2.  Within fourteen (14) days after the Effective Date, Debtor shall send notice to all parties in interest of all post-confirmation deadlines contained in the Plan.

8.3.     Until the Effective Date, nothing contained in this Plan shall have legal force or effect, nor shall anything set out in any Plan constitute an admission by the Debtor as to any Claim treated herein, in that this Plan is the Debtor's offer to settle each and every Claim treated herein.

8.4.    **Discharge**.  Pursuant to 11 U.S.C. § 1192, if this Plan is confirmed, as soon as practicable after completion of all payments due within the first three (3) years of the Plan, Debtor shall file a motion for entry of a discharge.  The Court may grant Debtor a discharge of all debts as provided in §§ 1192 and 1141(d) of the Bankruptcy Code, and all other debts allowed under § 503 of the Bankruptcy Code and provided for in the Plan, except any debt on which the last payment is due after the first three (3) years of this Plan, or of the kind specified in 11 U.S.C. § 523(a).

8.5.    This Plan is the Debtor's voluntary, good faith effort to resolve all matters dealt with herein, and all Claims treated herein. Until conclusion of a hearing on confirmation of this Plan, Debtor reserves the right to withdraw this Plan from consideration for confirmation, or to modify or amend this Plan.

ARTICLE IX
MODIFICATION OF THE PLAN

9.1.    **Prior to Confirmation.**  Debtor may modify this Plan pursuant to 11 U.S.C. § 1193(a) at any time prior to Confirmation, so long as the modification complies with the requirements of §§ 1122 and 1123 of the Bankruptcy Code.  Upon the filing of any such modification with the Bankruptcy Court, the Plan as modified becomes the Plan.

9.2.    **After Confirmation.**  The Debtor may modify this Plan at any time after Confirmation pursuant to 11 U.S.C. § 1193(b) before substantial consummation of the Plan so long as the modification complies with the requirements of §§ 1122 and 1123 of the Bankruptcy Code.  Notice shall be deemed sufficient if sent to each creditor with an unpaid Allowed Claim in this Bankruptcy Case.  However, if in the opinion of the Court the modification does not materially and adversely affect the interests of the creditors, the Court may authorize modification of the Plan without notice to any creditor.

9.3.    **Acceptances.**  Any acceptance of the Plan shall be deemed an acceptance of any subsequent modification of the Plan determined by the Bankruptcy Court not to materially and adversely affect or impair the Class of creditors for which the acceptance was presented.

ARTICLE X
THE NATURE OF DEBTOR'S BUSINESS

10.1.   Addmi, Inc. was established in mid-2016 with the initial goal of creating an app to replace traditional business cards. However, the Debtor quickly recognized that the trend had shifted, and users were no longer inclined to download new apps. Despite this, the Debtor's commitment to facilitating meaningful connections remained strong. In 2017, the Debtor pivoted to event ticketing, focusing on helping professionals network and engage at business events.

With the support of equity funding and a dedicated customer base, the Debtor maintained a modest team of 4-6 employees. However, in 2019, the COVID-19 pandemic severely impacted the Debtor's business. Although it was a challenging time, the responsibility the Debtor's principal felt toward its equity investors drove the Debtor to persevere. The Debtor shifted its focus to assisting restaurants by offering QR code ordering with very basic POS functions.

In 2020, the Debtor secured convertible notes, enabling it to expand its team and develop a comprehensive POS system from the ground up, right here in New Mexico. From 2020 to 2023,

The Debtor's team fluctuated around 8-12 employees, and by early 2022, it successfully completed the FULL POS system. This achievement led to a steady increase in customer engagement and revenue.

Unfortunately, the Debtor ran out of funding in mid-2023, leading to a reduction in employment and expenses. The Debtor's principal made a personal investment of capital to keep the company afloat, and proactively made this situation known to the noteholders and made them aware of the deadline for conversion. The Debtor offered the opportunity for certain of the convertible note holders to convert their notes, but instead, they chose to pursue legal action. Despite these challenges, the company is profitable, and its largest outstanding debt remains the convertible notes. Debtor has no secured debt.

Debtor has sought relief under Subchapter V to reorganize its debt pursuant to the requirements of the Bankruptcy Code, and to potentially discharge a portion of general unsecured debt, if applicable. Debtor's revenues have been consistently increasing since 2020, and Debtor now has the likelihood of generating additional revenue by selling "forked" copies of its source code.

## ARTICLE XI
## LIQUIDATION ANALYSIS

11.1. **Liquidation / Chapter 7.** If a Chapter 11 Plan is not confirmed, the Debtor's Chapter 11 Case could be converted to a case under Chapter 7 of the Bankruptcy Code without the Debtor's consent. In a Chapter 7, a Trustee would be elected or appointed, and the Trustee would determine which assets of the estate should be liquidated in order to yield funds for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. The Debtor's view of its assets and their liquidation values as of the Petition Date is attached hereto on **Exhibit A**.

In a liquidation, the Allowed priority Claim of the IRS would be paid first before any distribution to unsecured creditors. Any remaining funds available would be paid *pro rata* to unsecured creditors. The Debtor anticipates that, at best, $1,731,347.98 would be available to pay unsecured non-priority Claims in a chapter 7 case.

The Debtor believes that it is far more beneficial to creditors and the estate to reorganize through this Plan rather than liquidate in chapter 7. Section 704 of the Bankruptcy Code requires a chapter 7 trustee to collect and reduce to money the Property of the Estate as expeditiously as is compatible with the best interests of parties in interest. All operations of the Debtor would cease, and whatever assets could be liquidated would be at a price that is likely to be lower than the market value of the assets.

By contrast, through this Plan, the Debtor proposes to continue to operate and generate revenue in addition to marketing copies of its source code, which is far more likely to generate significant funds to pay Claims. The Debtor's projected revenues attached hereto show that the Debtor anticipates being able to pay all Claims in full.

11.2. **Dismissal.** If no Plan is confirmed in this Chapter 11 Case, the case could be dismissed. Upon dismissal, the IRS likely would take action to enforce its Claim against the Debtor's assets, potentially resulting in the death of the business and of any ability for the Debtor to pay other creditors. Creditors would be forced to pursue the Debtor in a "race to the Courthouse" to try to

recover whatever they could, if anything.

# ARTICLE XII
# TAX CONSEQUENCES OF DEBTOR'S PLAN OF REORGANIZATION

The Debtor is not in a position to advise creditors of the tax consequences that the Debtor's proposed Plan will have on creditors. The Debtor will incur tax each year in which property of the Debtor is sold or the business is operated. The amount of the tax the Debtor will incur cannot be ascertained until such time that sales prices are determined, but Debtor would expect that such tax would be incurred at the rate calculated for long term capital gains for the years in which sales are closed.

# ARTICLE XIII
# SOURCES OF FINANCIAL INFORMATION REGARDING DEBTOR

In addition to information provided in this Plan, additional available information regarding the financial history and condition of the Debtor consists of the following:

13.1. A list of creditors, by Class, is attached hereto as **Exhibit B**. The total amount of Claims (including disputed Claims) is $3,074,817.94, consisting of secured Claims: $0.00; priority Claims: $50,477.30; and unsecured Claims: $3,024,340.64.

13.2. Claims Register. Proofs of Claims have been filed by creditors filed herein, which proofs of Claim constitute prima facie evidence of the amounts owed by the Debtor to various creditors, and which proofs of Claim take precedence over amounts listed by the Debtor in its schedules of debts filed herein. A copy of the Claims Register maintained by the Clerk, showing all Proofs of Claim filed in this Case is attached hereto as **Exhibit C**. The total of Claims filed is secured Claims: $0.00; priority Claims: $50,477.30; and unsecured Claims: $2,867,340.64.

13.3. Debtor's Income projections, showing projections by month for 2024-2026, are attached hereto as **Exhibit D**. Debtor's projections show a net or "disposable" income for 2025 of $2,254,514.46, and for 2026 of $1,171,621.25, for a total of $3,426,135.71, which exceeds the amount of Claims on Exhibit B.

Debtor believes that it will be able to sustain these payments throughout the plan period.

# ARTICLE XIV
# MISCELLANEOUS

14.1. **Jurisdiction.** Unless the Bankruptcy Court determines otherwise, the Court shall retain jurisdiction of this Bankruptcy Case and over all adversary proceedings, contested matters, and other matters or proceedings arising in or in connection with this Bankruptcy Case, including without limitation jurisdiction to:

    a. Consider any modification of the Plan under § 1193 of the Bankruptcy Code, to the fullest extent permitted under the Bankruptcy Code;

    b. Hear and determine controversies, suits, and disputes between Debtor and any creditor that may arise in connection with the interpretation or enforcement of the Plan;

c. Hear and determine all requests for allowance of compensation and/or reimbursement of expenses by Professional Persons made after the Confirmation Date;

d. Classify, fix, liquidate, allow, or disallow Claims and direct distribution of the funds under the Plan, and hear and determine all objections to Claims, controversies, suits, and disputes pending on or after the Confirmation Date;

e. Adjudicate all Claims or controversies arising out of any purchases, sales, or contracts made or undertaken by Debtor during the pendency of this case;

f. Hear and determine any and all applications, adversary proceedings, and other matters arising out of or related to the Plan, including but not limited to actions under §§ 506, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code;

g. Correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the Plan or the Confirmation Order, or as may be necessary to carry out the purposes and intent of the Plan;

h. Determine disputed applications for the assumption or rejection of executory contracts and unexpired leases under § 365 of the Bankruptcy Code, and determine the allowance of the Claims resulting therefrom;

i. Determine any and all disputes arising under or relating to the Plan and enforce and administer the provisions of the Plan;

j. Enter a Final Decree under Bankruptcy Rule 3022 closing this Bankruptcy Case;

k. Make such Orders as are necessary or appropriate to carry out the provisions of the Plan;

l. Make such Orders or give such direction as may be appropriate under § 1142 of the Bankruptcy Code; and

m. Undertake such other matters, consistent with the Plan, as may be provided for in the Confirmation Order.

14.2. **Remedies to Cure Defects.** After the Confirmation Date, the Debtor may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the interest of Claimants, remedy any defect or omission, or reconcile any inconsistency in the Plan, or in the Confirmation Order, if necessary to carry out the purposes and the intent of the Plan.

14.3. **Headings.** Paragraph headings in this Plan have been inserted for the convenience of the reader. Such headings shall not serve in any way to limit or modify the provisions of the paragraph.

14.4. **Setoff.** Nothing contained in this Plan shall constitute a waiver or release by Debtor of any right of setoff Debtor may have against any Claimant.

14.5.    **Binding.**  As of the Effective Date, the provisions of this Plan shall be binding upon Debtor and all creditors, holders, and parties in interest, and their respective agents and representatives, pursuant to § 1141(a) of the Bankruptcy Code.

14.6.    **Successors and Assigns.**  The rights, duties, and obligations of Persons named or referred to in this Plan shall be binding upon, and shall insure to the benefit of, the successors and assigns of such Persons.

14.7.    **Governing Law.**  Except to the extent the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed and construed in accordance with the laws of the State of New Mexico.

14.8.    **Enlargement of Time.**  Any deadline to act or take action hereunder may be enlarged or shortened by written agreement of all affected parties.  Upon appropriate notice and after a hearing, the Bankruptcy Court may shorten or enlarge the time to take or conduct any act required or allow to be done under the Plan, for cause shown.

14.9.    **Notices.**  Notice shall be effective when sent by email, hand delivery, or first class mail.  Notices to Debtor shall be delivered to:

>   Chris M. Gatton
>   GATTON & ASSOCIATES, P.C.
>   10400 Academy Blvd NE, Suite 350
>   Albuquerque, NM  87111
>   505-271-1053
>   505-271-4848 (fax)
>   Email: chris@gattonlaw.com

Debtor may designate, in writing, other or additional recipients of notices by written notice.

14.10.    **Means of Execution.**  Debtor shall take all steps and execute all documents necessary to implement the Plan.

14.11.    **Selling Property.**  Upon the Effective Date, the Reorganized Debtor shall be authorized to sell or trade any assets without further Court approval.

Respectfully submitted,

GATTON & ASSOCIATES, P.C.

<u>/s/Chris M. Gatton</u>,
Submitted electronically 10.28.2024
10400 Academy Rd., NE, Suite 350
Albuquerque, NM  87111
Phone:  (505) 271-1053
Facsimile:  (505) 271-4848
Email: chris@gattonlaw.com
*Attorneys for Debtor*