## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| In re: | ) | In Proceedings |
| | ) | Under Chapter 11 |
| | ) | |
| ADDMI, INC., | ) | |
| | ) | BK     24-10776-j11 |
| Debtor. | ) | |

### OBJECTION AND RESERVATION OF RIGHTS OF MATTHEW AND JAMES AUFFENBERG TO THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

COMES NOW Matthew Auffenberg and James Auffenberg (collectively "Auffenberg"), by and through their counsel, and for their Objection and Reservation of Rights to the Debtor's Chapter 11 Plan of Reorganization (the "Plan") states as follows:

### BACKGROUND

1.  Auffenberg is holder of 94.37% of the unsecured claims in this bankruptcy proceeding by the Debtor's own calculations. See Plan, Exhibit B. Debtor's Plan was filed on October 28, 2024 and is predicated on the consummation of a sale of a "forked" version of Debtor's source code of software to fund Debtor's Plan. See Plan, Section 5.1.

2.  Since the filing of the Plan, Auffenberg, and the Subchapter V Trustee, have made numerous efforts to obtain additional information about the proposed sale, including but not limited to, confirmation and timing of the proposed sale, information about any competing offers, and opening a dialogue with the proposed purchaser about their intentions and ability to fund the proposed sale. To date, these questions and others remain unanswered, and without such information, creditors, including the Auffenberg, are without adequate information to fully analyze the Debtor's Plan. Without more, Auffenberg, while in favor of a sale of Debtor's assets that would pay Auffenberg fully or substantially on their claims, is forced to object to the Debtor's Plan as submitted for a number of reasons.

## ARGUMENT

### I.     The Plan is not Feasible under 11 U.S.C. § 1129(a)(11).

3.     In order for a plan to be confirmed, the plan proponent must show that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

4.     As it currently stands, Debtor is asking the Court to confirm its Plan, which is predicated on a sale that does not appear to be moving towards consummation and as such, the Plan is not feasible. The Debtor's Plan projections are almost entirely dependent on funding from the proposed sale of Debtor's forked code. See Plan, Exhibit D, Page 2. To date, Auffenberg has received no information, documentation, or verbal assurances from the proposed buyer that they intend to move forward with the sale. Moreover, Auffenberg is not aware of any deposit being made by the prospective buyer to fund a deposit for payments to be made under the Plan. Finally, the Plan does not provide for how, if at all, the Debtor would fund the Plan, including the approximate $1.7 million that Debtor's concede would be available to creditors in a Chapter 7 liquidation. See Plan, Exhibits, A, D. Without any specificity with regard to the timeline of the proposed sale or funding of the Plan, the Plan impermissibly shifts all of the risk of the Plan's failure on unsecured creditors like Auffenberg.

5.     At a minimum, since the Plan provides for payments over time, a showing of feasibility requires two components. First, the Debtor must demonstrate that the projections of future expenses and earnings are derived from realistic and reasonable assumptions that are not merely speculative. To date, no information has been shared to suggest that the proposed sale remains anything but speculative. Second, Debtor must demonstrate its ability to make the

2

proposed Plan payments, especially given their reliance on income from the proposed sale. *See In re Inv. Co. of the Southwest, Inc.*, 341 B.R. 298, 311 (B.A.P. 10th Cir. 2006) ("Projections must be based upon evidence of financial progress and must not be speculative, conjectural, or unrealistic").

6.     The burden of proof at confirmation is on the Debtor to show by a preponderance of the evidence that all the requirements of 1129 are met, including feasibility. Specifically, Debtor should be required to demonstrate that it can make all payments under the Plan or that there is a reasonable likelihood that Debtor would be able to make all payments and that the Plan provides for appropriate remedies if payments are not made. The Debtor has not and cannot demonstrate that the Plan, including the proposed sale, are feasible, and as a result confirmation of the Plan should be denied.

## II.    The Plan is Not in the Best Interest of Creditors

7.     While the Debtor in its Plan "anticipates being able to pay all Claims in full", the uncertainty of the prospective sale raises questions as to whether creditors would be better off in a liquidation, including a liquidation under Chapter 7. See Plan, Section 11.1.  As Auffenberg has stated, feasibility of the Plan is in question due to the numerous unanswered questions about the prospective sale. In addition to the above raised concerns, the Plan does not contain information about whether the Debtor has undertaken any efforts to try and sell its intellectual property as a whole, as opposed to a "forked" copy version. There is no discussion about any marketing of the assets and to date there has been no competitive bidding through a pre-plan Section 363 sale process.

3

8.      In the event that the proposed sale referenced in the plan is not concrete, Auffenberg submits that it would not be in the best interest of creditors to allow the Debtor to try and continue operating while making de minimis distributions to unsecured creditors when, by Debtor's own admission, the intellectual property assets have significant value. See Plan, Exhibits, A, D. Consequently, Debtor has not and cannot demonstrate that the Plan provides a greater outcome for creditors than a Chapter 7 liquidation and thus fails to satisfy 11 U.S.C. § 1129(a)(7).

### III.     The Plan is Not Fair and Equitable to Unsecured Creditors

9.      Under section 1129(b), a plan must be "fair and equitable" to creditors in order to be confirmed. Specifically, for a case under Subchapter V, section 1191 further provides that, with respect to unsecured creditors, the Plan shall provide for all projected disposable income of the Debtor for the plan period will be applied to make payments under the Plan or otherwise contribute the value of said projected disposable income during the plan period. 11 U.S.C. §1191.

10.      Given the unanswered questions the Plan raises, Auffenberg submits that any Plan should 1) provide that the Subchapter V Trustee, as opposed to the Debtor, should oversee the calculation of disposable income and the payments to unsecured creditors to ensure transparency and accuracy in the calculations and disbursements and 2) should provide additional safeguards for creditors in the event plan payments are not timely made. See 11 U.S.C. §1191(c)(3)B)(ii). Given the Plan's reliance on the sale of the Debtor's source code and Debtor's acknowledgement that creditors would receive a substantial distribution in Chapter 7, the Plan should provide default remedies that include the liquidation of Debtor's source code with supervision by a Chapter 7 Trustee.

4

**IV.** **The Plan Fails to Satisfy Disclosure Requirements**

11.     Auffenberg acknowledges that Subchapter V does not require a separate disclosure statement, however, the Plan as proposed, must still comply with Section 1190 of the Bankruptcy Code. 11 U.S.C. §1190.  In addition to the failure to provide information sufficient to examine the Debtor's ability to consummate the proposed sale, the Plan fails to provide adequate information of any investigation or analysis with respect to various pre-petition and post-petition transfers that have been raised to Debtor by creditors and the Subchapter V Trustee.  The Plan, and accompanying background information, do not provide any information regarding the alleged transfers by insiders of the Debtor or any investigation by Debor into the same. Auffenberg believes this information to be pertinent in analyzing whether this case should instead be proceeding under Chapter 7 of the Code with supervision and administration by a Chapter 7 Trustee and whether the Debtor or the Subchapter V Trustee should be charged with calculating disposable income for the Plan and making the required distributions. Without such information, feasibility of Debtor's Plan cannot be demonstrated, creditors are not able to fully analyze the best interest of creditors test and whether the Plan is fair and equitable, and as such, Debtor's Plan fails to comply with the disclosure requirements of Section 1190 of the Code and cannot be confirmed.

**CONCLUSION**

WHEREFORE for the forgoing reasons set forth herein Matthew and James Auffenberg respectfully requests that this Court deny confirmation of Debtor's Plan of Reorganization and for such other and further relief as the Court deems just and proper.

Respectfully submitted,


CARMODY MACDONALD P.C.

By:    */s/ Thomas H. Riske*
THOMAS H. RISKE (#61838MO)
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
(314) 854-8600 Telephone
(314) 854-8660 Facsimile
thr@carmodymacdonald.com

ATTORNEYS FOR MATT AUFFENBERG
AND JAMES AUFFENBERG


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was electronically filed with the Court via the CM/ECF System on the 5th day of February, 2025. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing.

   */s/ Thomas H. Riske*

6