UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

| In re: | ) | In Proceedings |
| --- | --- | --- |
| | ) | Under Chapter 11 |
| | ) | |
| ADDMI, INC., | ) | |
| | ) | BK   24-10776-j11 |
| Debtor. | ) | |

**OBJECTION AND RESERVATION OF RIGHTS OF MATTHEW AND JAMES AUFFENBERG TO THE DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN (SUBCHAPTER V) OF REORGANIZATION DATED MARCH 7, 2025**

COMES NOW Matthew Auffenberg and James Auffenberg (collectively "Auffenberg"), by and through their counsel, and for their Objection and Reservation of Rights to the Debtor's Chapter 11 Plan of Reorganization (the "Plan") states as follows:

**BACKGROUND**

1. Auffenberg is holder of 94.37% of the unsecured claims in this bankruptcy proceeding by the Debtor's own calculations. See Plan, Exhibit B. Debtor's Plan was filed on March 7, 2025 and is predicated on the consummation of a sale of a "forked" version of Debtor's source code of software to fund Debtor's Plan. See Plan, Section 5.1.

2. In preparing for the April 14, 2025 deposition of Debtor's principal, Andy Lim ("Lim"), Auffenberg discovered that despite numerous representations to the contrary to multiple courts, Debtor is currently a void Delaware Corporation and has been void since March 1, 2023. *See* Exhibit 1.  The Plan and its supporting documents are without any reference to this significant issue. Debtor is delinquent in taxes to the State of Delaware. Searches on the Delaware website reflect a claim in the approximate amount of $192,994.08. *See* Exhibit 2. This creditor and debt was not disclosed to the Court and creditors and this is significant because Debtor arguably is above the statutory cap for Subchapter V if this debt is legitimate. Additionally, the voiding of

Debtor's corporate status occurred over 2 years ago and Debtor continues to operate at the direction of Lim and is still representing to creditors and this Court that the corporate form of Debtor is intact. In addition to Auffenberg's previous objections related to feasibility, disclosure and best interest of creditors, Auffenberg submits that these new developments raise issues of good faith as well and therefore objects to confirmation for the reasons more fully stated below.

## ARGUMENT

I. **The Plan is Not Proposed in Good Faith**

3. Section 1129(a)(3) provides that a plan proponent must demonstrate that the plan at issue has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). A threshold issue is whether the voluntary petition in this case was properly authorized and in turn whether the proposed Plan was as well. While Auffenberg acknowledges that there is case law to suggest a voluntary petition can still be authorized by a dissolved corporation, Auffenberg submits that the situation at hand may be distinguishable by the "voiding" of Debtor's status rather than dissolution. *See Paul Rivera & Kalibrr, Inc.* v. Angkor Capital Ltd., 2024 WL 3873050 at *9 (Delaware August 2024)(finding a Delaware corporation to be void and not a dissolved corporation due to non payment of franchise taxes).

4. The "good faith" standard requires a court to assess the "totality of the circumstances". *See In re Autterson*, 547 B.R. 372, 399 (Bankr. D. Colorado 2016). In applying this test, Courts should consider technical compliance with the Bankruptcy Code as well as if "a plan is proposed with honesty and sincerity" and "whether a plan's terms or the process used to seek its confirmation was fundamentally fair. *Id.* 5. In the instant case, Debtor filed its petition and schedules under penalty of perjury and also filed a resolution with the Court that seems to be factually and legally incorrect. *See* Dkt. No. 4. At the time of this filing, Debtor's corporate status

was void and therefore the suggestion that it was authorized by the corporate resolution by its status as a foreign entity in New Mexico is misleading at best.

6.  Moreover, the claims register in this case reflects $2,933,530.63 in unsecured claims filed as of April 11, 2025. See Claims Register. If the claim of Delaware in the approximate amount of $192,994.08 is valid, the unsecured debt in this case would be approximately $3,126,524.71, in excess of the $3,024,725.0 statutory cap for Subchapter V.

7.  Auffenberg understands that subsequent to the deposition of Andy Lim, Debtor has endeavored to resolve the Delaware corporate form issue. However, nothing has been filed with the Court to reflect any updates to Debtor's corporate status, the efforts and/or payments that were required by the State of Delaware to resolve the unpaid tax issue and whether and how Debtor's current Plan is affected by this issue and purported tax claim of the State of Delaware.

8.  The Debtor has burden of demonstrating good faith and has not and cannot meet its burden that the current Plan was proposed in good faith and not by means forbidden by law. The misrepresentations by the Debtor as to its corporate status, omission of a taxing authority and its attendant debts from Debtor's schedules and Plan, and the eligibility concerns for proceeding as a Subchapter V case are not reflective of honesty and sincerity for the bankruptcy process. As such, confirmation of the Plan should be denied.

**II.  The Plan is not Feasible under 11 U.S.C. § 1129(a)(11).**

9.  In order for a plan to be confirmed, the plan proponent must show that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

10. As it currently stands, Debtor is asking the Court to confirm its Plan, which is predicated on a sale that has not and does not appear to be moving towards consummation and as such, the Plan is not feasible. See Report, Dkt. No. 85. The Debtor's Plan projections are almost entirely dependent on funding from the proposed sale of Debtor's forked code. See Plan, Exhibit D, Page 2. To date, Auffenberg has received no information, documentation, or verbal assurances from the proposed buyer that they intend to move forward with the sale. Moreover, Auffenberg is not aware of the funding of the deposit contemplated by the Plan. Finally, the Plan does not provide for how, if at all, the Debtor would fund the Plan, including the approximate $1.7 million that Debtor's concede would be available to creditors in a Chapter 7 liquidation. See Plan, Exhibits, A, D. Without any specificity with regard to the timeline of the proposed sale or funding of the Plan, the Plan impermissibly shifts all of the risk of the Plan's failure on unsecured creditors like Auffenberg.

11. At a minimum, since the Plan provides for payments over time, a showing of feasibility requires two components. First, the Debtor must demonstrate that the projections of future expenses and earnings are derived from realistic and reasonable assumptions that are not merely speculative. To date, no information has been shared to suggest that the proposed sale remains anything but speculative. Second, Debtor must demonstrate its ability to make the proposed Plan payments, especially given their reliance on income from the proposed sale. *See In re Inv. Co. of the Southwest, Inc.*, 341 B.R. 298, 311 (B.A.P. 10th Cir. 2006) ("Projections must be based upon evidence of financial progress and must not be speculative, conjectural, or unrealistic").

12. Debtor's Plan further lacks feasibility as it does not at all address Debtor's void corporate status or the significant state tax burden of approximately $192,994.08 that Debtor has

at all points failed to disclose in this case. Debtor's Plan is predicated on Debtor's continued operation of its business; however, Debtor's void corporate status prevents its operation and Debtor does not propose how it would reinstate itself in good standing nor are its taxes addressed in any capacity.

13. The burden of proof at confirmation is on the Debtor to show by a preponderance of the evidence that all the requirements of 1129 are met, including feasibility. Specifically, Debtor should be required to demonstrate that it can make all payments under the Plan or that there is a reasonable likelihood that Debtor would be able to make all payments and that the Plan provides for appropriate remedies if payments are not made. The Debtor has not and cannot demonstrate that the Plan, including the proposed sale, are feasible, and as a result confirmation of the Plan should be denied.

### III. The Plan is Not in the Best Interest of Creditors

14. While the Debtor in its Plan "anticipates being able to pay all Claims in full", the uncertainty of the prospective sale raises questions as to whether creditors would be better off in a liquidation, including a liquidation under Chapter 7. See Plan, Section 11.1. As Auffenberg has stated, feasibility of the Plan is in question due to the numerous unanswered questions about the prospective sale. In addition to the above raised concerns, the Plan does not contain information about whether the Debtor has undertaken any efforts to try and sell its intellectual property as a whole, as opposed to a "forked" copy version. There is no discussion about any marketing of the assets and to date there has been no competitive bidding through a pre-plan Section 363 sale process.

15. In the event that the proposed sale referenced in the plan is not concrete, Auffenberg submits that it would not be in the best interest of creditors to allow the Debtor to try and continue

5

operating while making de minimis distributions to unsecured creditors when, by Debtor's own admission, the intellectual property assets have significant value. See Plan, Exhibits, A, D. Consequently, Debtor has not and cannot demonstrate that the Plan provides a greater outcome for creditors than a Chapter 7 liquidation and thus fails to satisfy 11 U.S.C. § 1129(a)(7).

## IV. The Plan is Not Fair and Equitable to Unsecured Creditors

16. Under section 1129(b), a plan must be "fair and equitable" to creditors in order to be confirmed. Specifically, for a case under Subchapter V, section 1191 further provides that, with respect to unsecured creditors, the Plan shall provide for all projected disposable income of the Debtor for the plan period will be applied to make payments under the Plan or otherwise contribute the value of said projected disposable income during the plan period. 11 U.S.C. §1191.

17. Given the unanswered questions the Plan raises, Auffenberg submits that any Plan should 1) provide that the Subchapter V Trustee, as opposed to the Debtor, should oversee the calculation of disposable income and the payments to unsecured creditors to ensure transparency and accuracy in the calculations and disbursements and 2) provide additional safeguards for creditors in the event plan payments are not timely made. See 11 U.S.C. §1191(c)(3)B)(ii). Given the Plan's reliance on the sale of the Debtor's source code and Debtor's acknowledgement that creditors would receive a substantial distribution in Chapter 7, the Plan should provide default remedies that include the liquidation of Debtor's source code, possibly in the auction method proposed by the Debtor, however, with supervision by the Subchapter V Trustee or a Chapter 7 Trustee.

## V. The Plan Fails to Satisfy Disclosure Requirements

18. Auffenberg acknowledges that Subchapter V does not require a separate disclosure statement, however, the Plan as proposed, must still comply with Section 1190 of the Bankruptcy Code. 11 U.S.C. §1190. However, this latest iteration of the Plan does not have an analysis of potential Chapter 5 causes of action against insiders of the Debtor, including Andy Lim. Moreover, the Debtor's schedules have not been amended to speak to the various potential avoidable transfers that were raised at the deposition of Andy Lim and will be reflected in Auffenbergs proposed exhibits for the confirmation hearing.

19. As an example, within a month of Auffenberg filing suit against Debtor, Lim transferred his residence to a trust affiliate with Lim and his wife. See Exhibit 3. While Debtor likely takes the position that this was not a transfer of the Debtor, Auffenberg submits that the current questions about the corporate form of the Debtor do make this analysis relevant. The Plan and accompanying documents do not make this disclosure at all, let alone an analysis as to why it should not be pursued. Again, there are numerous pre and post-petition transfers that Auffenberg has raised to the Debtor but the Plan fails to set forth a discussion or analysis of any of the transfers.

20. Auffenberg believes this information to be pertinent in analyzing whether this case should instead be proceeding under Chapter 7 of the Code with supervision and administration by a Chapter 7 Trustee and whether the Debtor or the Subchapter V Trustee should be charged with calculating disposable income for the Plan and making the required distributions. Without such information, feasibility of Debtor's Plan cannot be demonstrated, creditors are not able to fully analyze the best interest of creditors test and whether the Plan is fair and equitable, and as such, Debtor's Plan fails to comply with the disclosure requirements of Section 1190 of the Code and cannot be confirmed.

## CONCLUSION

WHEREFORE for the forgoing reasons set forth herein Matthew and James Auffenberg respectfully requests that this Court deny confirmation of Debtor's First Amended Plan of Reorganization, dismiss this Chapter 11 proceeding for failure to confirm a plan, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

CARMODY MACDONALD P.C.

By: */s/ Thomas H. Riske*
THOMAS H. RISKE (#61838MO)
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
(314) 854-8600 Telephone
(314) 854-8660 Facsimile
thr@carmodymacdonald.com

ATTORNEYS FOR MATT AUFFENBERG
AND JAMES AUFFENBERG

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was electronically filed with the Court via the CM/ECF System on the 14th day of May, 2025. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing.

*/s/ Thomas H. Riske*

**EXHIBIT 1**

EXHIBIT 1

# Delaware
## The First State

I, CHARUNI PATIBANDA-SANCHEZ, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT THE CERTIFICATE OF INCORPORATION OF "ADDMI, INC.", WAS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-FIRST DAY OF APRIL, A.D. 2016.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CORPORATION IS NO LONGER IN EXISTENCE AND GOOD STANDING UNDER THE LAWS OF THE STATE OF DELAWARE HAVING BECOME INOPERATIVE AND VOID THE FIRST DAY OF MARCH, A.D. 2023 FOR NON-PAYMENT OF TAXES.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CORPORATION WAS SO PROCLAIMED IN ACCORDANCE WITH THE PROVISIONS OF GENERAL CORPORATION LAW OF THE STATE OF DELAWARE ON THE TWENTY-SEVENTH DAY OF JUNE, A.D. 2023 THE SAME HAVING BEEN REPORTED TO THE GOVERNOR AS HAVING NEGLECTED OR REFUSED TO PAY THEIR ANNUAL TAXES.



*C. P. Sanchez*

Charuni Patibanda-Sanchez, Secretary of State

6022810 8400
SR# 20251265880

Authentication: 203288521
Date: 03-27-25

You may verify this certificate online at corp.delaware.gov/authver.shtml

**EXHIBIT 2**

EXHIBIT 2

# *State Of Delaware*

**\*\*THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS\*\***

Date Retrieved: 3/8/2025 7:47:04AM

File Number: 6022810

Incorporation Date / Formation Date: 4/21/2016

Entity Name: ADDMI, INC.

Entity Kind: Corporation

Entity Type: General

Residency: Domestic

State: DELAWARE

Status: Void, AR's or Tax Delinquent

Status as of: 3/1/2023

**Registered Agent Information**

Name: THE CORPORATION TRUST COMPANY

Address: CORPORATION TRUST CENTER 1209 ORANGE ST

City: WILMINGTON

Country:

State: DE

Postal Code: 19801

Phone: 302-658-7581

**Tax Information**

Last AnnualReport Filed: 2020

Tax Due: $ 192994.08

Annual Tax Assessment: $85165

Total Authorized Shares: 10000000

**Filing History (Last 5 Filings)**

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|---|---|---|---|---|---|
| 1 | Merger [Survivor] | 1 | 20160421 | 191400 | 20160421 |
| 2 | Stock Corporation | 5 | 20160421 | 190500 | 20160421 |

**EXHIBIT 3**

EXHIBIT 3

Doc# 2023060862
09/22/2023 02:49 PM Page: 1 of 3
QCD R:$25.00 Linda Stover, Bernalillo County

**PREPARED BY:**
Andy Lim
9321 Signal Ave. NE
Albuquerque, New Mexico 87122

**RETURN RECORDED DOCUMENT TO:**
Andy Lim
9321 Signal Ave. NE
Albuquerque, New Mexico 87122

## QUITCLAIM DEED
(N.M.S.A. § 47-1-44(3))

This Quitclaim Deed is exempt from filing a New Mexico Residential Property Transfer Declaration Affidavit for the following reason: This instrument is an instrument from a person to a trustee or from a trustee to a trust beneficiary with only nominal actual consideration therefor.

Andy Lim and Sarah Lim, husband and wife, with an address of 9321 Signal Ave. NE, Albuquerque, New Mexico 87122 (collectively, the "Grantors"), for consideration paid, quitclaim to Andy Lim and Sarah Lim, as Co-Trustees of the DragonLim Family Trust dated August 17, 2023, with an address of 9321 Signal Ave. NE, Albuquerque, New Mexico 87122 (the "Grantee"), all of Grantors' right, title, interest, and claim in or to the real property located in Bernalillo County, New Mexico, described as follows (the "Property"):

**See Exhibit "A" attached hereto**

This conveyance is made to the Grantee under the terms and provisions of the DragonLim Family Trust dated August 17, 2023. The Grantee and any successor Trustee or Co-Trustees will hold the Property subject to all of the terms of the DragonLim Family Trust. The current and any successor Trustee or Co-Trustees have the power and authority to protect, to conserve, to sell, to lease, to encumber, or otherwise to manage and dispose of the real property described in this Quitclaim Deed.

Signed by the Grantors, Andy Lim and Sarah Lim, on September 11, 2023.

_____
Andy Lim

_____
Sarah Lim

EXHIBIT 3

**STATE OF NEW MEXICO**
**CITY/COUNTY OF** Bernalillo

This instrument was acknowledged before me this September 11th, 2023 by Andy Lim.

[SEAL]

```
KENNETH KNIGHT
Notary Public - State of New Mexico
Commission # 1127451
My Comm. Expires Oct 29, 2023
```

NOTARY PUBLIC
My Commission Expires: 10/29/23

**STATE OF NEW MEXICO**
**CITY/COUNTY OF** Bernalillo

This instrument was acknowledged before me this September 11th, 2023 by Sarah Lim.

[SEAL]

```
KENNETH KNIGHT
Notary Public - State of New Mexico
Commission # 1127451
My Comm. Expires Oct 29, 2023
```

NOTARY PUBLIC
My Commission Expires: 10/29/23

EXHIBIT 3

1308606 GB

Doc #2014002614 eRecorded
01/10/2014 04:37:00 PM Page 1 of 1
WDJT Rec Fee: $25.00 M. Toulouse Oliver, Bernalillo County

Old Republic National Title Insurance Company
Order Number: 1308606 GB

# WARRANTY DEED
## (Joint Tenants)

Frances Forman Hiatt Revocable Trust UTA dated June 7, 1993, for consideration paid, grant(s) to Andy Lim and Sarah Lim, Husband and Wife, whose address(es) is/are: 8131 Corta Del Viento NW, Albuquerque, NM 87120, the following described real estate in Bernalillo County, New Mexico,

Lot numbered Twenty-three (23) and Lot numbered Twenty-four (24) in Block numbered Fourteen (14) of North Albuquerque Acres, Tract Three (3), Unit Three (3), as shown and designated on the plat of said Subdivision, filed in the office of the County Clerk of Bernalillo County, New Mexico, on September 10, 1931, in Plat Book D, folio 121.

SUBJECT TO all patent and mineral reservations, restrictive covenants, restrictions and reservations of easements and rights-of-way of record, and all applicable zoning regulations, restrictions and requirements and all other matters of record and to taxes for the year 2014 and subsequent years;

with warranty covenants.

Dated: January 09, 2014

Frances Forman Hiatt Revocable Trust UTA dated
June 7, 1993

*Michael Paige Forman, Trustee*
Michael Paige Forman, Trustee

### ACKNOWLEDGMENT

STATE OF New Mexico

COUNTY OF Bernalillo

This instrument was acknowledged before me on January 10, 2014 by , Michael Paige Forman, Trustee of Frances Forman Hiatt Revocable Trust UTA dated June 7, 1993.

OFFICIAL SEAL
Gail E. Bremer
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _____

Notary Public
My Commission expires: 9-29-14

Special Warranty Deed NM Statutory Form    Page 1 of 1    Rev. 5/05